GLICKSTEIN, HUGH S., Associate Judge,
concurring specially.
By way of preface, in my view, the parties and public have a right to know the course of this appeal. This matter was argued before the panel in April 1989. In June, 1989, my colleagues tendered a proposed reversal. What follows as a concurrence was originally — with minor changes — my dissent to that proposed reversal and was tendered to the other panelists in July, 1989. In April, 1990, the majority tendered the above affirmance.
We must affirm. To do otherwise would show our having failed to see the forest for the trees. The record supports the order in question; reversal would do worse than strain credulity.
I believe today, as I did when this matter was argued, that reversal would only be the product of sterile formalism; and a conclusion that the facts on the record failed to bring appellant within the language and intent of the statute must derive from an unrealistic analysis of the record or a mechanistic reading of the securities transactions statute.
Exercising ordinary common sense, the trial court entered the order which the court now affirms. Why should the trial court, under such circumstances, risk receiving a post card from Switzerland or from an offshore island country, announc *1319 ing appellant had gone off to open a numbered bank account? It was wise to enter the order, and it would have been folly for this court to reverse. To allow assets now in appellant’s control to be free from the trial court’s authority would have been an appalling decision, given the immensity of the fraud at the root of this case.
According to section 517.191(1), Florida Statutes (1987), the Department of Banking and Finance may seek an injunction to stop a person from fraudulent practices in violation of the securities transaction statute, or from engaging in acts in furtherance of such a violation. The basis for such an injunction is a showing by the department of the person’s present, past, or anticipated future engagement in a violative act or practice, or participation in or furtherance of such an act. Subsection (2) of the same section permits the court to impound, and appoint a receiver for, the property, assets and business of such a defendant.
I agree with the trial court that appellant’s actions constituted, if not direct violation of Chapter 517, at the very least acts in furtherance of violations of that chapter by her husband. The intended effect of her more recent actions, such as the sale of horses which had been purchased by the husband or the oil exploration company, and the deposit of the proceeds in an out-of-state bank under her maiden name, is to conceal assets properly belonging to duped investors but fraudulently separated from the investors by her husband, through the sale of worthless securities.
Moreover, it can be reasonably concluded that some of appellant’s actions prior to the exposure of her husband’s immense securities fraud — for example, appellant’s cosigning of a note for a large loan to her husband from NCNB, and appellant’s giving an investor documents describing the sham oil exploration company’s supposed assets and financial condition — directly assisted the husband in his fraudulent securities transactions.
If the courts did not have the power— and did not exercise it — to prevent dissipation or removal from the jurisdiction of ill-gotten assets such as are involved here, then Dickens’ fictional character was indeed correct: the law is an ass. I refuse to accept the notion that the maxim, “For every wrong there is a remedy,” must mean, in the present context, that a person who has been defrauded of his or her life’s savings in a securities scam may obtain an uncollectible judgment.